**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

S.M.B.,

                  Plaintiff,

v.                                              CIVIL ACTION NO. 3:17-1300

WEST VIRGINIA REGIONAL JAIL AND
CORRECTIONAL FACILITY AUTHORITY,
MICHAEL YORK,
P. OWENS, and
JOHN DOE #1,

                  Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Michael York's and P. Owen's Motion to Dismiss. ECF No. 9. Plaintiff brought suit against Defendants alleging violations of the state and federal constitutions and common law negligence for failing to protect him from physical and sexual assault by his fellow inmates at the Western Regional Jail. Defendants, employees of the West Virginia Regional Jail and Correctional Facility Authority ("WVJCFA"), believe they are entitled to qualified immunity and should be dismissed from the suit. Defendants also contend that the West Virginia Constitution does not permit money damages. For the following reasons the Court **GRANTS** in part and **DENIES** in part the Motion to Dismiss.

## I.    Background

Plaintiff was initially detained at Western Regional Jail ("WRJ") in October 2014 as a pretrial detainee. Compl. ¶¶ 3, 12, ECF No. 1. He was housed in POD C-1. *Id.* ¶ 13 During his time in C-1 a number of inmates harassed and threatened to kill Plaintiff and one inmate even

constructed a noose out of bed sheets. *Id.* ¶ 14. Plaintiff notified WRJ staff about the threats and harassment, and he was placed in protective custody. *Id.* ¶ 15. At some point after he was placed in protective custody, Plaintiff was released on bond. *Id.*

On February 20, 2015, Plaintiff was again detained at the WRJ after his bond was revoked. *Id.* ¶¶ 11, 16. Upon admission, Plaintiff informed Defendant John Doe #1 that he should not be housed in POD C-1 due to the presence of the same inmates that had threatened him during his previous stay in C-1. *Id.* ¶ 17. Defendants York and Owens were on duty as booking officers or supervisors on February 20 and 21. *Id.* ¶¶ 5, 6. Plaintiff alleges that one or more of the Defendants responded to his protestations that he "shouldn't have come back to jail" and his safety "was a personal problem." *Id.* ¶ 19. Defendants did not conduct a review of records related to Plaintiff's previous stay, and Plaintiff was assigned to C-1. *Id.* ¶ 20.

Within hours of his arrival inmates that had threatened his life during his previous stay physically and sexually assaulted Plaintiff. *Id.* ¶ 21. During their assault the inmates rendered Plaintiff unconscious and inflicted such injury that Plaintiff required emergency surgery to repair his spleen. *Id.* ¶ 22. Plaintiff also suffered a number of broken bones and other injuries consistent with sexual assault. *Id.*

Plaintiff filed this suit claiming Defendants violated his federal and state constitutional rights to be free from cruel and unusual punishment and Defendants negligently performed their duties when they reassigned Plaintiff to POD C-1. *Id.* ¶¶ 24–42.

Defendants York and Owens now move the Court to dismiss Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Def.'s Mem. in Supp. of Mot. to Dismiss 1, ECF No. 9. Defendants believe they are entitled to qualified immunity

for their conduct as WVJCFA employees and that West Virginia does not permit recovery of money damages for violations of the state constitution. *Id.* 3, 6.

## II.    Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and then (2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the remaining factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555–56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

a. *Qualified Immunity*

Defendants' argue that they are entitled to qualified immunity for their conduct in this case. Defendants resort to state qualified immunity standards and principles to demonstrate their immunity. Def.'s Mem in Supp. of Mot. to Dismiss 3–5. West Virginia's state qualified immunity standard, although modeled on the federal standard, does not apply to Plaintiff's federal claims, *See State v. Chase Secs., Inc.*, 424 S.E.2d 591, 595 (W. Va. 1992) (finding that the state immunity inquiry should be guided by federal immunity in Section 1983 cases); *Howlett v. Rose*, 496 U.S. 356, 375 (1990) (holding that in Section 1983 cases "[t]he elements of, and the defenses to, a federal cause of action are defined by federal law"). As a result, the Court takes Defendants' Motion to challenge only Plaintiff's state law claims.

The most comprehensive formulation of West Virginia's qualified immunity standard can be found in *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.* 766 S.E.2d 751, 755, Syl. Pt. 5 (W. Va. 2014) (quoting *Chase Secs.*, 424 S.E.2d 591). The West Virginia Supreme Court of Appeals declared that "[a] public executive official who is acting within the scope of his authority . . . is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known." The court went on to explain that "[t]here is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive." *Id.*

The Supreme Court of Appeals created a two-step analysis to establish whether a public official may be shielded by qualified immunity. A reviewing court must first ascertain "the nature of the governmental acts or omissions which give rise to the suit." *Id.* at Syl. Pt. 10 (citing *Parkulo v. W. Va. Bd. of Probation and Parole*, 483, S.E.2d 507, Syl. Pt. 7 (W. Va. 1996)). If the nature of

the act is "judicial, executive, or administrative policy-making," the official is absolutely immune. *Id.* Where the act is a "discretionary function," the officer is entitled to immunity unless the following two qualifications obtain: (1) the act was in violation of a clearly established statutory or constitutional right which a reasonable person would have known, or (2) was otherwise "fraudulent, malicious, or oppressive." *Id.* (citing *Chase Secs.* 424 S.E.2d 591).

As applied to York and Owens, their "general functions as correctional officer[s], like most law enforcement officers, are *broadly* characterized as discretionary, requiring the use of [their] discretionary judgments and decisions." *Id.* at 767–68 (emphasis in original). Plaintiff does not seriously dispute that York and Owens were exercising their discretion as WRJ officials to determine the proper housing for Plaintiff at the WRJ. Consequently, the Court must determine whether Plaintiff adequately alleged that York and Owens' actions violated a clearly established right or were otherwise fraudulent, malicious, or oppressive.

Taking Plaintiffs well-pleaded factual allegations as true, as the Court must at the pleading stage, Plaintiff has made sufficient allegations that York and Owens violated his rights under the West Virginia Constitution and the United States Constitution to be free from cruel and unusual punishment. W. Va. Const. art. III, § 5 (West, Westlaw through 2017); U.S. Const. amend. VIII.[1] The Supreme Court of Appeals has explicitly held on multiple occasions that "prison inmates in the West Virginia correctional system, have [a] right[] . . . to reasonable protection from constant

---

[1] The United States Supreme Court and the Fourth Circuit have held, on multiple occasions, that prison officials have a duty to protect prisoners from violence "at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To fail in the reasonable execution of that duty violates an inmate's Eighth and Fourteenth Amendment rights. *See Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973); *see also Kartman v. Markle*, 582 Fed. App'x 151, 153 (4th Cir. 2014) *Meadows v. Saunders*, 14 F.3d 595 (4th Cir. 1993); *Doe v. Roe*, 907 F.2d 1137 (4th Cir. 1990).

threat of violence and sexual assault by fellow inmates." *Bishop v. McCoy*, 323 S.E.2d 140, 148 (W. Va. 1984) (citing *Hackl v. Dale*, 299 S.E.2d 26, 28 (W. Va. 1982)); *Harrah v. Leverette*, 271 S.E.2d 322, 674–75 (W. Va. 1980).

As alleged, York and Owen's actions did not reasonably protect Plaintiff from violence at the hands of his fellow inmates. During his initial stay at the WRJ, jail employees thought threats to Plaintiff's safety serious enough to warrant placing him in protective custody. Upon reentry, a mere four months later, Plaintiff informed York and Owens that the inmates who previously threatened him were still housed in C-1 and he should not be housed there. Defendants remarked sardonically that Plaintiff "shouldn't have come back to jail" and his safety "was a personal problem." They then housed him in C-1, the very same housing unit where just months before he was removed for his own safety. Shortly thereafter, Plaintiff was sexually assaulted and savagely beaten to such a degree that he required emergency surgery. Defendants' remarks, if ultimately proved, demonstrate more than just a violation Plaintiff's clearly established rights, but also a sadistic indifference to the monstrous cruelty inflicted on and by the very people the State of West Virginia entrusts to the care of Defendants to protect and rehabilitate. *Bishop*, 323 S.E.2d at 148 (holding inmates have rights to protection and rehabilitation).

Moreover, Defendants' failure to review Plaintiff's previous housing designation, especially after he informed them that the same inmates who had threatened him were still housed in C-1, reveals a callous disregard of the duty to exercise their discretion reasonably as dictated by the state and federal constitutions. As such, Plaintiff has pled both a violation of a clearly and long-established constitutional right of which any prison official is certainly aware, and conduct that is

"malicious and oppressive." Accordingly, Defendants are not entitled to qualified immunity for their conduct.[2]

b. *Damages for Violations of the West Virginia Constitution*

Defendants next argue that Plaintiff's state constitutional claims must be dismissed against them because they seek money damages and West Virginia does not recognize recovery of money damages for violations of the state constitution. Plaintiff counters by arguing that although there is no Section 1983 analogue for state constitutional claims, the availability of money damages should be implied. After all, Plaintiff concludes, there is no statute authorizing equitable relief for violations of the state constitution but their availability is implied. *See Harrah v. Leverette*, 271 S.E.2d 322, 324 (W. Va. 1980).

Courts in this District have more or less consistently held that money damages for state constitutional violations are not available. *Sanders v. Jones*, No. 3:15-cv-14196, 2016 WL

_____

[2] In the alternative, Plaintiff alleges York and Owens negligently performed their duties and their negligence proximately caused Plaintiff's injuries. Defendants attempt to argue that qualified immunity bars claims of negligence. For support they cite to this Court's decision in *Lavender v. W. Va. Reg'l Jail & Corr. Facility Auth.* No. 3:06-cv-1032, 2008 WL 313957, at *8 (S.D.W. Va. Feb. 4, 2008). Defendants' reliance is misplaced. In *Lavender*, the Court made clear that where a government official's acts "give rise to a deprivation of a right clearly established by statutory law or constitutional rights," the official is not entitled to qualified immunity, regardless of whether the acts were negligent. *Id.* The Court based its holding on the Supreme Court of Appeals' decision *Clark v. Dunn*. 465 S.E.2d 374, 380 (W. Va. 1995). "In *Clark*, plaintiff brought a negligence action against [a state official], who was found to be engaged in the performance of discretionary judgments . . . within the course of his . . . duties." *A.B.*, 766 S.E.2d at 763 (citing *Clark*, 465 S.E.2d at 380). The *Clark* Court noted "that the officer did not violate a "clearly established" right. (internal citation omitted). As such, the court held that the state official was entitled to qualified immunity. *Clark*, 465 S.E.2d at 380. In the subsequent *A.B.* case, the Supreme Court of Appeals credited the *Clark* Court for reaffirming the qualified immunity standard, which it then restated. *A.B.*, 766 S.E.2d at 763. It is the same standard this Court applied in this case. Thus, as this Court has already held, where a state official acts in a discretionary manner, that official is not entitled to qualified immunity if his actions violated a clearly established right. Whether the illegal act was done intentionally or negligently is not determinative to the application of qualified immunity. *See Id.*

3512247, at *2 (S.D.W. Va. Jun. 22, 2016) (Chambers, C.J.); *Howard v. Ballard*, 2:13-cv-11006, 2015 WL 1481836, at *4 (S.D.W. Va. Mar. 31, 2015) (Johnston, J.); *McMillion-Tolliver v. Kowalski*, No. 2:13-cv-29533, 2014 WL 1329790, at *2 (S.D.W. Va. Apr. 1, 2014) (Goodwin, J.); *Smoot v. Green*, No. 2:13-cv-10148, 2013 WL 5918753, at *4 (S.D. W. Va. Nov. 1, 2013) (Copenhaver, J.); *but see Aliff v. W. Va. Reg'l Jail and Corr. Facility Auth.*, No. 2:15-cv-13513, 2016 WL 5419444, at *11 (S.D.W. Va. Sept. 26, 2016) (Johnston, J.) (noting that the court had previously considered certifying the question to the Supreme Court of Appeals). In all, except *Aliff*, courts in this district have relied on the Supreme Court of Appeals case *Harrah v. Leverette*. 271 S.E.2d at 324. In that case the Supreme Court of Appeals held:

> A person brutalized by state agents while in jail or prison may be entitled to:
> (a) A reduction in the extent of his confinement or his time of confinement;
> (b) Injunctive relief, and subsequent enforcement by contempt proceedings . . . ;
> (c) A federal cause of action authorized by 42 U.S.C. § 1983; and
> (d) A civil action in tort

*Id.* at Syl. Pt. 4. All of the courts note the conspicuous absence of a specific remedy for money damages. In such absence the courts in this district, applying an *expressio unius* argument to the *Harrah* decision, have held that the West Virginia Constitution does not provide for money damages without some additional legislative action akin to Section 1983. *See, e.g.*, *McMillion-Tolliver*, 2014 WL 1329790, at *2 ("Without an independent statute authorizing money damages for violations of the West Virginia Constitution, the plaintiff's claim . . . must fail.").

Plaintiff, not unconvincingly, argues that courts in this district have read too much into the *Harrah* decision. Plaintiff highlights that the decision does not explicitly bar damages awards. Plaintiff further argues that rather than barring recovery of damages for state constitutional violations, *Harrah* implicitly sanctioned them by permitting civil tort actions, of which constitutional torts are a species.

In support of his gloss on *Harrah*, Plaintiff turns to *Hutchinson v. City of Huntington*, 479 S.E.2d 649 (W. Va. 1996), which he believes supports, again implicitly, his argument. The *Hutchinson* Court explicitly recognized that a private cause of action exists where the state government violates the state constitution. *Id.* at 660. The Supreme Court of Appeals remarked that this proposition was undisputed and went no further. *Id.* From this Plaintiff insists that by finding a private cause of action, the court was also sanctioning money damages for constitutional violations. The Plaintiff reasons that there would be no meaning to state constitutional guarantees without such a remedy.

Doubtless, money damages would serve to remedy unconstitutional behavior by state agencies and officials. Nevertheless, recognition of a private cause of action does not imply recognition of a specific remedy to that cause of action. In light of *Harrah*, which explicitly sanctions injunctive relief, the more sound assumption is that a private cause of action may be brought for seeking equitable relief to remedy constitutional violations but not money damages.

The Court also interprets *Harrah* to represent the Supreme Court of Appeals' decision to rely on federal law, that is Section 1983, and state common law tort suits to provide a vehicle, otherwise unavailable, to recover money damages for state constitutional violations. Section 1983 suits brought pursuant to the United States Constitution and common law tort suits permit recovery of money damages, and can often, if not always, be brought on the same grounds as a state constitutional claim.

Admittedly, the issues raised by Plaintiff are not addressed particularly well by the state courts of West Virginia. Based on the paucity of guidance, reasonable minds could certainly differ on the interpretation of the state constitution and the Supreme Court of Appeals decisions explicating it. Nevertheless, in light of the near unanimous view in this district and the Court's

reasoning above, the Court finds that Plaintiff cannot recover money damages for violations of the state constitution. *See Private Mortg. Inv. Servs., Inc. v. Hotel Club and Assocs., Inc.*, 265 F.3d 308, 312 (4th Cir. 2002) (holding that where a state supreme court has not spoken directly on an issue, it is incumbent on the federal courts to predict how that court would rule if presented with the issue). Plaintiff's claims for damages based on violations of the state constitution are therefore dismissed.

## IV.    Conclusion

For the reasons stated herein, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to dismiss. Plaintiff's claims for money damages based on violations of the West Virginia Constitution are **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order and Notice to counsel of record and any unrepresented parties.

ENTER:        September 1, 2017

ROBERT C. CHAMBERS, CHIEF JUDGE